

**NUMBER 13-19-00593-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**IN THE INTEREST OF M.W., A CHILD**

---

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion by Justice Hinojosa**

Appellant L.W. (Mother) appeals a judgment terminating her parental rights to her child M.W.[1] In three issues, Mother argues that: (1) her due process rights were violated because she did not appear for part of the termination trial; (2) her service plan was not

---

[1] To protect the identity of the minor child, we refer to the child and his relatives by their initials. *See* TEX. R. APP. P. 9.8(b)(2).

tailored for a mentally ill parent, in violation of the equal protection clause; and (3) there is legally insufficient evidence supporting termination.[2] We affirm.

## I.    BACKGROUND

### A.    Petition and Removal

Appellee, the Department of Family and Protective Services (the Department), filed a petition seeking to terminate Mother's parental rights to her newborn son M.W. The petition was accompanied by an affidavit in support of removal alleging that Mother's mental health issues prevented her from caring for a newborn child.

### B.    Mother's Presence at Trial

When the case was called for trial on August 26, 2019, Mother was not present. The trial court discussed with the parties whether to continue the termination hearing. During this discussion, Mother appeared in the courtroom, and a brief recess followed. When the hearing resumed, the parties announced that they reached an agreement whereby the bench trial would commence that day and then recessed for thirty to forty-five days in light of a recently prepared psychosocial assessment which indicated potential family placements for M.W. The trial court indicated its approval, and the trial commenced. After the examination of the first witness, the trial court recessed the hearing. When the trial resumed on October 10, Mother was not present. However, her attorney did not object to proceeding.

---

[2] The trial court also terminated the parental rights of M.W.'s father, R.A. However, he does not appeal.

## C.    Trial Record

Nelva Perez, Mother's conservatorship caseworker, testified that the Department removed M.W. from Mother's care due to an allegation that Mother was experiencing mental health issues. Through Perez, the Department introduced the affidavit in support of removal and Mother's psychological evaluation, which the trial court admitted over Mother's objection.[3] The trial court also admitted the family service plan prepared by the Department for Mother, Mother's mental health treatment records, and a prior termination decree.

In the service plan, the Department identified the following reasons for removing M.W. from Mother's care: Mother's current mental health issues; a pattern of "maltreatment" resulting in five previous terminations of her parental rights; and M.W.'s vulnerable condition. Specifically, the plan noted that Mother was diagnosed with bipolar disorder, schizophrenia, and depression, and that she was suffering from delusions. For

---

[3] Mother objected to the removal affidavit and psychological evaluation on hearsay grounds. "Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay." TEX. R. EVID. 802. But when hearsay is admitted over an appropriate objection, it has no probative value and should not be considered in evaluating the sufficiency of the evidence. *See Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 242 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied); *see also Long Island Vill. Owners Ass'n, Inc. v. Berry*, No. 13-14-00363-CV, 2016 WL 1072856, at *14 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2016, pet. denied) (mem. op.).

In her appellant's brief, Mother offers the following question: "Is lay testimony or testimony bolstered by affidavits of other persons previously involved in a termination case legally sufficient evidence to uphold a clear and convincing finding?" Mother makes no attempt to answer this question with argument or authority, and she does not raise an evidentiary issue in this appeal. Specifically, Mother does not provide any argument as to whether her hearsay objections were "appropriate" or the extent to which this Court can consider the objected-to hearsay in this appeal. We conclude that this issue is waived because it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Nevertheless, we note that the evidence contained in the affidavit and psychological evaluation is largely mirrored by Perez's in-court testimony and other exhibits admitted without objection. *See In re L.M.*, 572 S.W.3d 823, 833 (Tex. App.—Houston [14th Dist.] 2019, no pet.) ("In reviewing the entire record, we hold that any error in admitting hearsay statements in the removal affidavit was harmless."); *In re E.A.K.*, 192 S.W.3d 133, 148 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Error in the admission of evidence is generally deemed harmless if the same or similar evidence is subsequently introduced without objection.").

instance, Mother believed that she was being monitored by a camera connected to her thumb and that M.W. was talking to her from the womb. The plan noted that M.W. was born with bilateral retinoblastoma, a cancer of the eyes, which contributed to his vulnerability. This information was gathered through Mother's interactions with Department and mental health caseworkers.

The service plan required Mother to perform the following tasks: provide the Department with a psychiatric evaluation report from MHMR[4] and continue attending appointments with her mental health providers; attend and successfully complete an individual counseling program and follow through on counselor recommendations; cooperate with random drug screens; participate in supervised visitation; actively participate in dialogue with the Department caseworker; and pay minimum wage child support.

Perez testified that Mother completed a psychiatric evaluation, but she failed to complete the program that was recommended as a result of the evaluation. Perez testified that Mother visited M.W. only twice during the pendency of the case, despite having the opportunity for weekly visits in the months following removal and monthly visits when M.W. was moved from Corpus Christi, Texas to his current foster placement in Houston, Texas. The Department provided Mother bus passes to attend the visits in Houston. On one occasion, Perez drove Mother to Houston to visit M.W. Mother made varying excuses for missing scheduled visits, including that she had forgotten, missed her alarm, or had car problems. According to Perez, Mother made no efforts to learn about M.W.'s condition and care. Perez stated that Mother's last known residence was a motel.

---

[4] MHMR refers to the former Texas Department of Mental Health and Mental Retardation which is now part of the Department of State Health Services.

Perez testified that M.W. was currently placed in foster care with P.F. and her husband M.F. The couple previously adopted M.W.'s half-sibling. Perez maintained that the couple has provided for M.W.'s basic needs and that it was in M.W.'s best interests to terminate Mother's parental rights.

Mother's mental health treatment records from Behavioral Health Center of Nueces County indicated that Mother was being treated for schizoaffective disorder and depression. Mother reported that she was "still hearing things, seeing things." The records indicate Mother has received inpatient treatment at Behavioral Health Center on thirty-one occasions. Mother reported to her caseworker that "there was a camera placed inside her thumb by a Lieutenant William, who raped her at age 4, and sees her every move."

P.F., M.W.'s foster mother, testified that, along with M.W., she lives with her husband M.F. and her adopted son and M.W.'s half-sibling, N.W. At the time of trial, M.W. had resided in her home for over a year. P.F. stated that M.W. was diagnosed with retinoblastoma when he was two months old, which resulted in the removal of M.W.'s right eye. M.W. received several rounds of chemotherapy treatment for the condition. P.F. stayed with M.W. for thirty days in the hospital during his treatment. P.F. stated that M.W. receives weekly speech and physical therapy, and bi-weekly occupational therapy. She explained that M.W., who was a year old at the time of trial, will require surgery in the future for a condition called hypospadias.

P.F. testified that M.W. is "intellectually challenged" and he requires "constant therapy." M.W. receives early childhood intervention services to prepare him for preschool. P.F. stated that Mother has not contacted her to ask about M.W., and Mother has only visited him once in the past year. P.F. and her husband intend to adopt M.W.

5

**D.     Trial Court's Ruling**

The trial court signed an order terminating Mother's rights, finding, as statutory grounds for termination, that Mother had:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> (M) had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state; [and]
>
> (O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (M) & (O). The trial court further found that termination of Mother's parental rights was in M.W.'s best interests. *See id*. § 161.001(b)(2). This appeal followed.

## II.     DUE PROCESS

In her first issue, Mother asks the following: "What is required of the trial court to sustain a finding that a mentally ill parent 'failed to appear' status [sic] thus waiving due process rights[?]" We construe Mother's issue as arguing that her due process rights were violated when the second half of the termination trial was held in her absence.

We first note that, beyond the quoted language above, Mother provides no further argument or authorities. Rule 38.1 of the Texas Rules of Appellate Procedure requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). "Bare assertions of error

6

without argument or authority waive error." *In re J.A.M.R.*, 303 S.W.3d 422, 425 (Tex. App.—Dallas 2010, no pet.).

In addition, Mother did not raise the issue in the trial court by a timely request, objection, or motion. *See* TEX. R. APP. P. 33.1(a)(1). A parent's right to retain custody of her children is a constitutionally protected liberty interest that must be afforded procedural due process. *In re J.P.-L.*, 592 S.W.3d 559, 574–75 (Tex. App.—Fort Worth 2019, pet. denied). However, complaints about due process violations must be raised and ruled on in the trial court in order to be preserved for appeal. *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *see* TEX. R. APP. P. 33.1(a). We also note that Mother's mere absence without a reasonable excuse would not entitle her to a continuance of the trial. *See Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *see also In re F.R.G.*, No. 12-18-00131-CV, 2018 WL 5812532, at *8 (Tex. App.—Tyler Nov. 5, 2018, no pet.) (mem. op.). Here, Mother's counsel did not provide a reasonable excuse for her absence, move for a continuance, or otherwise object to proceeding in Mother's absence. Therefore, she has not preserved this issue for appellate review. We overrule Mother's first issue.

### III.    EQUAL PROTECTION

In her second issue, Mother argues the following: "The trial court erred because a mentally ill parent is entitled to tailored service plans and should be judged using a balancing test of behavior when stable vs. behavior unmedicated: failing to do so is a violation of of [sic] the equal protection clause."

Like Mother's first issue, she fails to support this issue with argument and authorities. Therefore, we conclude that she has waived the issue. *See* TEX. R. APP. P.

7

38.1(i); *In re J.A.M.R.*, 303 S.W.3d at 425. We also note that Mother did not raise the issue in the trial court by a timely request, objection, or motion. *See* TEX. R. APP. P. 33.1(a)(1). "[T]he rules governing error preservation must be followed in cases involving termination of parental rights, as in other cases in which a complaint is based on constitutional error." *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005); *In re B.L.D.*, 113 S.W.3d 340, 350–51 (Tex. 2003). By not raising the issue in the trial court, Mother has not preserved this issue for appellate review.

For the foregoing reasons, we overrule Mother's second issue.

## IV. LEGAL SUFFICIENCY

In her third issue, Mother asks the following question: "Does the testimony of a foster parent and caseworker without actual knowledge of the facts regarding a parent rise to the level of sufficient evidence[?]" We construe this issue as challenging the legal sufficiency of the evidence supporting the trial court's findings.

## A. Standard of Review & Applicable Law

Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence. *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

In reviewing the legal sufficiency of the evidence supporting termination, we "look at all the evidence in the light most favorable to the finding to determine whether a

reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). We must assume that the fact finder resolved disputed facts in favor of its finding if it was reasonable to do so, and we must disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible. *In re L.J.N.*, 329 S.W.3d at 671. We must also consider undisputed evidence, if any, that does not support the finding. *In re K.M.L.*, 443 S.W.3d at 113.

Before parental rights may be involuntarily terminated, the trier of fact must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in § 161.001(b)(1) of the family code; and (2) that termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012).

## B.    Statutory Grounds

"To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232–33 (Tex. 2019) (per curiam). When a parent fails to challenge all of the statutory predicate findings, we presume that those unchallenged findings are supported by sufficient evidence. *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied); *In re N.L.D.*, 412 S.W.3d 810, 818 (Tex. App.—Texarkana 2013, no pet.).

Mother argues that her court-ordered services were inadequate, which arguably presents a legal sufficiency challenge to the trial court's finding under § 161.001(b)(1)(O) of the family code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O). But she presents no

9

argument which can be construed as a challenge to the remaining statutory grounds. *See id.* § 161.001(b)(1)(E), (M). Because Mother does not challenge each of the statutory grounds for termination, we presume the unchallenged findings are supported by sufficient evidence. *See In re S.J.R.-Z.*, 537 S.W.3d at 683; *In re N.L.D.*, 412 S.W.3d at 818. Next, we address the legal sufficiency of the evidence supporting the trial court's best interest finding.

## C.     Best Interests

### 1.     *Holley* Factors

There is a strong, though rebuttable, presumption that keeping a child with a parent is in the child's best interest. TEX. FAM. CODE ANN. § 153.131; *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). We consider the following factors in determining whether termination of parental rights is in a child's best interest: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions committed by the parent which may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions committed by the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The party seeking termination is not required to prove all nine *Holley* factors, and in some cases, undisputed evidence of just one factor may be sufficient to support a finding that termination is in the best interest of the child. *In re C.H.*, 89 S.W.3d 17, 25, 27 (Tex. 2002). In conducting our analysis of the *Holley* factors, "we focus on the best interest of the child,

10

not the best interest of the parent." *In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.).

**2. Analysis**

As to the first *Holley* factor, M.W. was too young to express his desires. Therefore, this factor is neutral as to termination. *See In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *In re A.C.*, 394 S.W.3d 633, 643 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The young age of the child render[s] consideration of the child's desires neutral.").

As to the second *Holley* factor, P.F. testified that M.W. suffered from retinoblastoma which resulted in the loss of his right eye. Further, the condition will require future monitoring to ensure that the vision in M.W.'s left eye is preserved. M.W. will also eventually need surgery to correct another condition. According to P.F., M.W. is "intellectually challenged" and requires early child intervention services, as well as speech, occupational, and physical therapies. This evidence demonstrates that M.W. has emotional and physical needs beyond those typical of his age.

Relevant to the third *Holley* factor, regarding emotional and physical danger to the child, is evidence of Mother's mental illness. The record reflects that Mother suffers from schizoaffective disorder and depression. Her condition manifests itself through auditory and visual hallucinations. At the time of trial, Mother had discontinued her mental health treatment program. Mental illness alone is not grounds for terminating the parent-child relationship. *In re S.R.*, 452 S.W.3d 351, 363 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). However, untreated mental illness can expose a child to endangerment, and it is a factor the court may consider. *Id.*

11

Also relevant to this factor is evidence that Mother has had her parental rights terminated to five of her other children. A trier of fact may consider a parent's history with her other children in considering the danger or potential danger to another child. *In re E.C.R.*, 402 S.W.3d 239, 248 (Tex. 2013); *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("[E]ndangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children[.]"); *In re E.A.F.*, 424 S.W.3d 742, 751 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). This evidence is also relevant to the fourth and eighth *Holley* factors, regarding parenting abilities and acts indicating the parent-child relationship is improper.

With respect to services available to Mother, the fifth *Holley* factor, the evidence established that Mother failed to comply with her obligations under the Department's service plan regarding visitation and mental health treatment. Further, there is no evidence in the record supporting Mother's assertion on appeal that her service plan was not properly tailored to her mental health needs. To the contrary, the record demonstrates that Mother has had the longstanding support of MHMR mental health providers, whose services were incorporated into her service plan.

We finally consider the sixth and seventh *Holley* factors, concerning the plans for the children and the stability of the home or proposed placement. Mother did not testify, and she was not present for the final portion of the trial. The record reflects that she has not consistently kept Department representatives apprised of her whereabouts or contact information. According to Perez, Mother was most recently living in a motel. There is no other evidence in the record regarding Mother's plans to provide M.W. with a stable, safe environment. In contrast, the Department presented evidence that M.W. is currently in an

12

adoptive foster placement with his half-sibling. M.W.'s foster parents are currently able to meet his substantial medical and developmental needs.

A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *In re G.A.C.*, 499 S.W.3d 138, 141 (Tex. App.—Amarillo 2016, pet. denied); *In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.); *see* Tᴇx. Fᴀᴍ. Cᴏᴅᴇ Aɴɴ. § 263.307(a) (providing that, in considering whether parents are willing and able to provide a safe environment, "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest"). The trier of fact may consider that the child's best interest may be served by termination so that adoption may occur, rather than the impermanent foster-care arrangement that would result in the absence of termination. *See In re K.C.*, 219 S.W.3d at 931. The foregoing evidence demonstrates that Mother was unable to provide a stable environment for M.W. and therefore supports the trial court's best interest finding.

Considering all the evidence in the light most favorable to the judgment, we conclude that a reasonable trier of fact could have formed a firm belief or conviction, based on clear and convincing evidence, that terminating Mother's parental rights was in M.W.'s best interests. *See In re J.L.*, 163 S.W.3d at 85.

**D.     Summary**

We conclude that there is legally sufficient evidence supporting the trial court's termination order. *See id*. We overrule Mother's third issue on appeal.

## V.   CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Delivered and filed the
16th day of April, 2020.